## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD G. COLLURA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TIME WARNER, INC., JEFFREY L. BEWKES, JAMES L. BARKSDALE, WILLIAM P. BARR, ROBERT C. CLARK, MATHIAS DÖPFNER, JESSICA P. EINHORN, CARLOS M. GUTIERREZ, FRED HASSAN, PAUL D. WACHTER, and DEBORAH C. WRIGHT<br><br>Defendants. | CIVIL ACTION NO. _____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS** |

Plaintiff Richard G. Collura ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

### NATURE AND SUMMARY OF THE ACTION

1. Plaintiff brings this class action on behalf of the public stockholders of Time Warner, Inc. ("Time Warner" or the "Company") against the members of Time Warner's Board of Directors (the "Board" or the "Individual Defendants") or their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rules 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 229.1015(b)(4), arising out of their attempt to sell the Company to AT&T Inc. ("AT&T").

2. On October 22, 2016, AT&T and the Company announced they had entered into an Agreement and Plan of Merger dated October 22, 2016 ("Merger Agreement"), by which AT&T, through its wholly owned subsidiary, West Merger Sub, Inc. ("Merger Sub"), will acquire all of

the outstanding shares of Time Warner in a stock-and-cash transaction valued at $107.50 per share (the "Proposed Transaction"). The merger consideration is comprised of $53.75 per share in cash and $53.75 per share in AT&T stock. The stock portion will be subject to a collar such that Time Warner stockholders will receive 1.437 AT&T shares if AT&T's average stock price is below $37.411 at closing and 1.3 AT&T shares if AT&T's average stock price is above $41.349 at closing.

3. The Proposed Transaction has a total transaction value of approximately $108.7 billion and is expected to close before year-end 2017.

4. On January 9, 2017, Time Warner filed a definitive proxy statement on a Schedule 14A (the "Proxy") with the SEC, which set the stockholder vote date on the Proposed Transaction for February 15, 2017. The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding GAAP reconciliation of the non-GAAP financial measures contained in the Company's projections, which were prepared by Company management and relied upon by Allen & Company LLC ("Allen"), Citigroup Global Markets Inc. ("Citi"), and Morgan Stanley & Co. LLC ("Morgan Stanley"), the Company's financial advisors.

5. Without additional information the Proxy is materially misleading in violation of federal securities laws.

6. By unanimously approving the Proposed Transaction and authorizing the issuance of the Proxy, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Proxy was materially incomplete and misleading. The Proxy is an essential link in obtaining stockholder approval for the Proposed Transaction.

7. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from conducting the stockholder vote on the Proposed Transaction on February 15,

2017 unless and until the material information discussed below is disclosed to Time Warner's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

9.      Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Time Warner maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES AND RELEVANT NON-PARTIES

11.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Time Warner.

12. Time Warner is a corporation organized and existing under the laws of the State of Delaware. It maintains principal executive offices at One Time Warner Center, New York, NY 10019.

13. Defendant Jeffrey L. Bewkes ("Bewkes") is Chairman and Chief Executive Officer ("CEO") of the Company. Bewkes was elected Chairman of the Board in January 2009, previously having served on the Board since January 2007. Bewkes was elected CEO of the Company in January 2008. Additionally, Bewkes served as President and Chief Operating Officer ("COO") of the Company from January 2006 to December 2007 and as Chairman of the Entertainment and Networks group from July 2002 to December 2005.

14. Defendant James L. Barksdale ("Barksdale") has been a director of the Company since January 2001.

15. Defendant William P. Barr ("Barr") has been a director of the Company since July 2009.

16. Defendant Robert C. Clark ("Clark") serves as Lead Independent Director and has been a director of the Company since January 2004.

17. Defendant Mathias Döpfner ("Döpfner") has been a director of the Company since July 2006.

18. Defendant Jessica P. Einhorn ("Einhorn") has been a director of the Company since May 2005.

19. Defendant Carlos M. Gutierrez ("Gutierrez") has been a director of the Company since October 2013.

20. Defendant Fred Hassan ("Hassan") has been a director of the Company since October 2009.

21. Defendant Paul D. Wachter ("Wachter") has been a director of the Company since October 2010.

22. Defendant Deborah C. Wright ("Wright") has been a director of the Company since May 2005.

23. Defendants referenced in ¶¶ 13 through 22 are collectively referred to as Individual Defendants and/or the Board.

24. Relevant non-party AT&T is a corporation organized and existing under the laws of the State of Delaware. AT&T maintains its principal executive offices at One AT&T Plaza, 208 South Akard Street, Dallas, TX 75202.

25. Relevant non-party Merger Sub is a Delaware corporation and wholly owned subsidiary of AT&T that was created for the purposes of effectuating the Proposed Transaction.

## CLASS ACTION ALLEGATIONS

26. Plaintiff brings this action as a class action on behalf of all persons and/or entities that own Time Warner common stock (the "Class"). Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

27. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. The Proxy states that, as of January 3, 2017, there were 771,830,769 shares of common stock outstanding. All members of the Class may be identified from records maintained by Time Warner or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

28. Questions of law and fact are common to the Class, including (i) whether Defendants solicited stockholder approval of the Proposed Transaction through a materially false or misleading Proxy in violation of federal securities laws; (ii) whether Plaintiff and other Class members will suffer irreparable harm if securities laws violations are not remedied before the vote on the Proposed Transaction; and (iii) whether the Class entitled is to injunctive relief as a result of Defendants' wrongful conduct.

29. Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct as alleged herein.

30. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

31. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

## FURTHER SUBSTANTIVE ALLEGATIONS

*Company Background and its Poise for Growth*

32. Time Warner is a global leader in media and entertainment with a great portfolio of content creation and aggregation, and iconic brands across video programming and TV/film production. Time Warner has three divisions: (i) Turner, which consists of U.S. and international basic cable networks, including TNT, TBS, CNN and Cartoon Network/Adult Swim, and has sports rights that include the National Basketball Association, NCAA Men's Championship Basketball Tournament, and Major League Baseball; (ii) HBO, which consists of domestic premium pay television and streaming services (HBO Now, HBO Go) featuring such original

series as Game of Thrones, VEEP, and Silicon Valley, as well as international premium & basic pay television and streaming services; and (iii) Warner Brothers, which consists of television, feature film, home video and videogame production and distribution. The Company also has film franchises and has invested in digital media properties.

33. While Time Warner has not yet reported its full year 2016 results, the results look promising. Most recently, on November 2, 2016, the Company issued a press release announcing its financial results for the third quarter of 2016. The Company reported a 9% increase in revenue to $7.2 billion, and operating income grew 10% to $2.0 billion. Indeed, Defendant Bewkes commented on the positive results stating:

> We had a strong third quarter, which keeps us on track to exceed our original 2016 outlook and underscores our leadership in creating and distributing the very best content. In television, HBO took home more Primetime Emmy Awards than any other network for the 15th consecutive year and Time Warner's divisions won a total of 40 Emmys, more than any other company. CNN's standout election coverage made it the #1 news network in primetime among adults 18-49 for the fourth consecutive quarter and Turner's momentum doesn't stop there. Year-to-date, TBS, TNT and Adult Swim are three of the top five ad-supported cable networks in primetime among adults 18-49. In film, Warner Bros. had a strong quarter led by *Suicide Squad* and has the #1 release of the fall in *Sully*, while anticipation is off the charts for J.K. Rowling's *Fantastic Beasts and Where to Find Them*, which hits the big screen on November 18.

34. Indeed, on the same day that it announced its third quarter 2016 financial results, the Company increased its full-year 2016 business outlook. In a press release, the Company stated that it expects its 2016 full-year Adjusted EPS to be in the range of $5.73 to $5.83.

*The Sale Process*

35. According to the Proxy, "[s]ince 2008, Time Warner has executed spin-offs of Time Warner Cable (in March 2009), AOL (in December 2009) and Time Inc. (in June 2014), positioning it as a video-centric entertainment company." Then, "[i]n the summer of 2014, Twenty-First Century Fox made an unsolicited proposal to acquire Time Warner for a mix of

7

$32.42 in cash and 1.531 shares of Twenty-First Century Fox Class A non-voting common stock." The Board determined the Twenty-First Century Fox proposal was not in the best interests of Time Warner and its stockholders, and Twenty-First Century Fox subsequently withdrew it.

36. On August 25, 2016, at a meeting between Defendant Bewkes and Randall Stephenson, Chairman and CEO of AT&T, Stephenson expressed an interest in exploring a potential combination of Time Warner and AT&T, indicating an acquisition price of the Company in the range of $100 per share. Bewkes concluded that he would discuss such a transaction with the Board.

37. The next day, Bewkes informed Stephen Bollenbach ("Bollenbach"), the then-Lead Independent Director for the Company, and informed Bollenbach of AT&T's approach.

38. On August 29, 2016, Time Warner and AT&T executed a confidentiality agreement.

39. On September 2, 2016, Stephenson reiterated to Defendant Bewkes that he continued to believe that AT&T could pay a price in the range of $100 per share to acquire Time Warner.

40. Following a Board conference call on September 7, 2016, the Board authorized engagement with AT&T, including mutual due diligence, to enable AT&T to improve its initial proposed value and come forward with a more definitive proposal.

41. Between September 9, 2016 and September 22, 2016, representatives of Time Warner and AT&T, and their respective legal and financial advisors, engaged in further telephonic discussions and had two in-person meetings.

42. On September 28, 2016, Stephenson offered a proposal for AT&T to acquire Time Warner for $103 per share, consisting of 45% cash and 55% AT&T common stock, subject to a

5% symmetrical collar on the stock component. In response, Defendant Bewkes indicated that the Board would require a purchase price well above Stephenson's proposal in order to pursue a potential combination with AT&T. Stephenson then stated that AT&T could increase its proposal to $105 per share, subject to a 4% symmetrical collar on the stock component, but that there would be no basis for further discussion if the Company's price expectation was in the teens.

43. On October 6, 2016, the Board met to consider AT&T's revised proposal and determined to authorize management to continue discussions with AT&T with a view to improving the price offered, changing the consideration mix to 50% cash and 50% AT&T common stock, improving the collar protection, and securing commitments regarding obtaining regulatory approval, as well as a payment to Time Warner in the event regulatory approvals could not be obtained notwithstanding AT&T's compliance with its commitments.

44. On October 7, 2016, Defendant Bewkes proposed a price of $110 per share consisting of 50% cash and 50% AT&T common stock, subject to a 5% symmetrical collar on the stock component.

45. On October 11, 2016, representatives of Time Warner and AT&T management met in Dallas, TX. Following the meeting, Defendant Bewkes and Stephenson agreed to continue to work towards a transaction based on a purchase price of $107.50 per share, consisting of 50% cash and 50% AT&T common stock, with a 5% symmetrical collar on the stock component of the consideration. Bewkes subsequently updated the Board on his discussions with Stephenson.

46. Between October 13 and October 15, 2016, Time Warner contacted each of Citi and Morgan Stanley to engage them to act as financial advisors, together with Allen, to Time Warner in connection with the potential transaction with AT&T.

47. Also, between October 13, 2016 and October 22, 2016, Time Warner and its legal advisors and AT&T's legal advisors had multiple meetings to negotiate the terms of the Merger Agreement.

48. On October 22, 2016, the Board approved the Proposed Transaction, and Time Warner and AT&T executed the Merger Agreement.

*The Materially Misleading and Incomplete Proxy*

49. Defendants have failed to provide stockholders with material information necessary for an informed vote on the Proposed Transaction. The Proxy, which recommends that the Company's stockholders vote in favor of the Proposed Transaction on February 15, 2017, misrepresents and/or omits material information in violation of Sections 14(a) and 20(a) of the Exchange Act.

50. The Proxy fails to provide material information concerning the Company's financial projections. Specifically, with respect to Time Warner's projections, the Proxy states the following:

> Certain of the Time Warner management forecasts set forth below may be considered non-GAAP financial measures. Non-GAAP financial measures should not be considered in isolation from, or as a substitute for, financial information presented in compliance with U.S. GAAP, and non-GAAP financial measures as used in the Time Warner management forecasts may not be comparable to similarly titled measures used by other companies.

51. The Proxy goes on to provide Company projections for various metrics including revenue, Adjusted Operating Income Before Depreciation and Amortization ("OIBDA"), and unlevered free cash flow. However, the Proxy fails to provide line item metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to GAAP. The omission of such projections renders the non-GAAP projections included in the Proxy materially incomplete and misleading.

10

52. When a company discloses non-GAAP financial metrics to stockholders, the Company must also disclose comparable GAAP metrics and a quantitative reconciliation of forward-looking information. Otherwise, non-GAAP financial metrics are likely to mislead stockholders concerning the true state of a company's finances.

53. Indeed, the SEC has recently increased its scrutiny of the use of non-GAAP financial metrics in communications with stockholders. Recently, SEC Chairwoman Mary Jo White stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Time Warner has included in the Proxy), implicates the centerpiece of the SEC's disclosure regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

54. Further, the SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of

---

[1] Mary Jo White, Chairwoman, SEC, Keynote Address at the International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

such projections.[2]  In fact, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial metrics that demonstrate the SEC is indeed tightening policy.[3]  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide *any* reconciling metrics that are available without unreasonable efforts.

55. Thus, the above-referenced line-item projections that have been omitted from the Proxy are precisely the types of "reconciling metrics" that the SEC has recently indicated should be disclosed to render non-GAAP financial projections not misleading to shareholders.

56. Without this material information, the current disclosures are inherently materially incomplete and misleading, and the Company's stockholders cannot make an informed decision whether or not to vote in favor of the Proposed Transaction or seek appraisal for their shares, and are being harmed.

57. Defendants' failure to provide Time Warner's stockholders with the foregoing material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder.  The Individual Defendants were aware of their duty to disclose this information.  The material information described above that was omitted from the Proxy takes on actual significance in the minds of Time Warner's stockholders in reaching their decision whether to vote in favor of the Proposed Transaction.  Absent disclosure of this material

---

[2]  *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. TIMES, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

[3]  *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, SEC (May 17, 2016), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

information prior to the vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make an informed decision about whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm for which damages are not an adequate remedy.

## CLAIMS FOR RELIEF

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder**

58. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

59. Defendants have issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction.

60. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that a proxy statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

61. Specifically, the Proxy violates Section 14(a) and Rule 14a-9 because it is materially misleading in numerous respects and omits material facts, as set forth above. Moreover, in the exercise of reasonable care, Defendants should have known that the Proxy is materially misleading and omitted material facts that are necessary to render the statements that are made non-misleading.

62. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth.

63. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their right to cast a fully informed vote on the Proposed Transaction.

64. Plaintiff and the Class have no adequate remedy at law.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

65. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

66. The Individual Defendants acted as controlling persons of Time Warner within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Time Warner, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

67. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

68. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act

violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the preparation and dissemination of the Proxy.

69. In addition, as the Proxy sets forth at length, and as described herein, that the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

70. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

71. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

72. Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **RELIEF REQUESTED**

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A) declaring this action to be a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

(B) declaring that the Proxy is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(C) preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

(D) to the extent the Proposed Transaction is consummated prior to the Court's entry of a final judgment, awarding Plaintiff and the members of the Class rescissory damages against the Individual Defendants, including, but not limited to, pre-judgment and post-judgment interest;

(E) awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

(F) awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, and any appropriate state law remedies; and

(G) granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  January 19, 2017

Respectfully submitted,

By: */s/* Michael B. Ershowsky
**LEVI & KORSINSKY, LLP**
Michael B. Ershowsky, Esq.
30 Broad Street, 24th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
mershowsky@zlk.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**LEVI & KORSINSKY, LLP**
Donald J. Enright (to be admitted *pro hac vice)*
Elizabeth K. Tripodi (to be admitted *pro hac vice)*
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: denright@zlk.com
          etripodi@zlk.com

*Attorneys for Plaintiff*